1814.

FROST
v.
BEEKMAN.

*October* 3d.

FROST AND OTHERS *against* BEEKMAN.

Where a deed was deposited by the grantor with W., as an *escrow*, to be deli=
vered to the grantee, on his producing a mortgage executed and recorded,
and a certificate of the clerk of no encumbrances on record, and W., on re-
ceiving the mortgage and certificate of registry, &c. delivered the deed to
the grantee, and the grantor received the mortgage, &c., from W., and
treated it, afterwards, as a valid mortgage; he was held to be concluded
from denying the delivery of the deed, on the ground that the wife of the
mortgagor had not acknowledged the mortgage, and that the mortgage was
erroneously registered for less than the true sum.

A deed, delivered as an *escrow*, takes effect only from the time of the per-
formance of the condition, and the actual delivery to the grantee; except
in cases where a relation back to the first delivery is necessary to give ef-
fect to the deed, or to the intermediate conveyances of the grantee; but not
as between third persons.

The registry of a mortgage, given to secure *three thousand* dollars, but, by the
mistake of the clerk, registered for *three hundred* dollars, is *notice* to sub-
sequent *bona fide* purchasers, to the extent only of the sum expressed in the
*registry.*

But *actual* notice of the *true sum* contained in the mortgage, is sufficient, as
to all purchasers, or payments, subsequent to the time of such notice.

A party claiming relief in equity as a *bona fide* purchaser, must, positively
and precisely, deny all notice, though it is not charged.

THE bill in this cause, which was filed in *April,* 1808, stated, that *Frost,* one of the plaintiffs, and *Martin Goddard,* then deceased, in *August,* 1803, agreed to purchase of *Henry Corl,* jun., lot No. 33, in the town of *Marcellus,* containing 600 acres; that, on the 19th of *September,* 1803.

*Corl* conveyed 200 acres, part of the lot, to *Frost*, for which *Frost* paid him, in *August*, 1803, 300 dollars, and, on receiving the deed, 700 dollars more ; that *Corl*, in *September*, 1805, pursuant to the agreement, conveyed half of the residue of the lot to *Frost*, and half to *Martin Goddard*, and the deeds were duly recorded the 15th of *September*, 1807. On receiving the last mentioned deeds, *Frost* and *Martin Goddard* gave their promissory notes to *Corl*, for the purchase money, and which notes *Corl* assigned to others. In *September*, 1807, *Frost* sold the 200 acres of land, first conveyed to him, to *Jesse Kellogg*, one of the plaintiffs ; and *Martin Goddard* sold and conveyed his interest in the lot to *Eli Goddard* and *Philo Goddard*, two of the plaintiffs. That the plaintiffs discovered on the records, in the office of the clerk of the county of *Onondaga*, a mortgage from *Corl* to *John K. Beekman*, the defendant, dated *May* 6th, 1803, registered the 9th of *September*, 1805, to secure the sum of 300 dollars, payable on the 6th of *May*, 1808, with interest ; on discovery of which mortgage, *Frost* applied to the defendant, and offered to pay the sum of 300 dollars, and interest, which was refused ; and to the surprise of *Frost*, the defendant stated the mortgage in fact to be to secure the sum of 3,000 dollars, which sum he demanded, saying there was a mistake in the registry as to the sum. That *Frost* had no knowledge or suspicion of the mortgage, at the time of the delivery of either of the deeds from *Corl* to him ; nor had, as he believed, *Martin Goddard* any knowledge of it at the time of the delivery of the deed to him ; and that *Frost* and *Martin Goddard* have sold and conveyed the lands as aforesaid, without any knowledge or suspicion of any other mortgage, than one for 300 dollars. That the interest of the plaintiffs ought not, therefore, to be affected by the mortgage beyond the sum of 300 dollars expressed in the registry ; that valuable improvements have been made on the lot, since the purchase from *Corl* ; that the defendant is advertising the lot for sale under the mort-

1814.

FROST
v.
BEEKMAN.

1814.

FROST
v.
BEEKMAN.

gage, for the purpose of raising the sum of 3,000 dollars, &c. And the plaintiffs prayed an injunction to stay all further proceedings on the part of the defendant, &c.

The *answer* of the defendant stated, that, in *May*, 1803, he had a good title to the lot in question, which he agreed to sell on the 6th of *May*, 1803, to *Corl*, for 3,000 dollars, payable the 6th of *May*, 1808, with interest. The agreement was by parol ; but the defendant promised to execute a deed, and sent it to *R. Westerlo*, of *Albany*, as an *escrow*, to be delivered to *Corl* when he should produce to *Westerlo* a mortgage of the lot, to secure the purchase money, duly executed by him and his wife, and registered according to law, and a certificate of the clerk that there was no other mortgage on the lot registered. That the defendant, accordingly, on or about the 6th of *May*, 1803, signed and sealed a deed for the lot to *Corl*, who, at the same time, drew a mortgage to be executed by *Corl* and wife, which was approved of by the defendant ; and the defendant deposited his deed with *Westerlo*, as an *escrow*, to be delivered to *Corl* on his producing the *mortgage* and certificate as aforesaid. That, in *September*, 1805, as the defendant was informed by *Westerlo*, *Corl* produced, and delivered to *Westerlo*, a certificate of the clerk of *Onondaga*, dated *September* 9th, 1805, that there was no mortgage of the premises on registry in this office, and that *Corl* had left in his office, that day, a mortgage executed by him and his wife, to *Beekman*, for the premises, to secure the payment of 3,000 dollars, &c. That, shortly after, *Corl* delivered to *Westerlo* the mortgage, for securing the sum of 3,000 dollars, dated the 6th of *May*, 1803, purporting to be executed by *Corl* and his wife, acknowledged by *Corl* the 7th of *September*, 1805, and registered the 9th of *September*, 1805 ; and that *Westerlo*, on receiving the mortgage and certificate, delivered up the deed of the defendant to *Corl ;* but the defendant insisted that such delivery was not valid, because the conditions, on which the deed was to be delivered, were not per-

formed by *Corl*, as the mortgage, though purporting to be signed by the wife of *Corl*, had not been acknowledged by her. That *Corl* having absconded long before the day of payment, and no person appearing to satisfy the mortgage, the defendant caused the lot to be advertised for sale under the power contained in the mortgage; that the defendant had no knowledge of the facts stated in the bill; that in *September*, 1807, he first discovered that the clerk, in registering the mortgage, had inserted 300 instead of 3,000 dollars; and he charged, that the plaintiffs purchased without any reference to the registry; and that he hoped to prove, that the plaintiffs and *Martin Goddard* had previous notice of the mortgage, &c.

The defendant admitted that improvements had been made on the lot, but to what extent or value he was ignorant.

It was proved, on the part of the plaintiff, that *Corl* absconded in the summer or autumn of 1803, and that his wife died in *July* or *August*, 1806. The sale of the lot to *Frost* and *Martin Goddard*, by *Corl*, as stated in the bill, was proved. One of the witnesses, *Samuel Whitney*, stated, that in *September*, 1807, he discovered the mortgage of the defendant on record, and communicated the fact to the sons of *M. Goddard*, which he believed was the first notice *Frost* or *Goddard* had of it. Two other witnesses, *Russel Taylor* and *Nathan Healy*, stated, that the deeds from *Corl*, to *Frost* and *Goddard*, were given in *September*, 1806, when the articles of agreement for the same land were given up to *Corl*. *Frost* gave two notes, of 420 dollars each, to *Corl*, who had given a receipt for 130 dollars paid before, and, in *February*, 1806, *Corl* received 140 dollars.

*Rufus Lawrence* stated, that he paid *Corl*, for *Martin Goddard*, at two different times, 460 dollars, and *Goddard* also gave *Corl* a note for 300 dollars. The notes of *Frost* and *Goddard*, to the amount of 700 dollars, were, afterwards, seen in the hands of *Matthew Trotter*, to whom they had been assigned, and who gave them up to *Frost* and *Martin*

1814.

FROST
v.
BEEKMAN.

*Goddard*, and took new notes, payable to himself, for the same amount. It appeared that the deed from *Corl* to *Frost*, for 200 acres, was dated *September* 19, 1803, for the consideration of 1,000 dollars, acknowledged the 11th of *April*, 1805, and recorded *July* 3, 1805; and the deed for 207 1-2 acres, from *Corl* to *Frost*, was dated *September* 1, 1805, acknowledged the 13th of *September*, 1806, and the 15th of *September*, 1807, for the consideration of 1,000 dollars; and the deed to *Martin Goddard* was acknowledged and recorded at the same time. The deed from *Frost* to *Kellogg*, of 200 acres, for the consideration of 2,000 dollars, was dated the 21st of *September*, 1807, and acknowledged and recorded on the same day. There was also a deed from *Kellogg* to *Frost*, dated the 6th of *July*, 1808, for 200 acres, for the consideration of 2,000 dollars, acknowledged on the 7th of *July*, 1808, and recorded the 13th of *May*, 1809. The deed from *Martin Goddard* to *Philo Goddard* was dated the 24th of *November*, 1807, for 50 acres, for the consideration of 400 dollars, but was not recorded; and the deed from *Martin Goddard* to *Eli Goddard*, was for 100 acres, dated also the 24th of *November*, 1807, for the consideration of 700 dollars.

It appeared, also, from the exhibits, that the deed from *Beekman* to *Corl* was dated the 5th of *May*, 1803, acknowledged the 11th of *December*, 1804, and recorded the 15th of *September*, 1806; and that the mortgage, from *Corl* to *Beekman*, was dated the 6th of *May*, 1803, acknowledged the 7th of *September*, 1805, and recorded the 9th of *September*, 1805.

It was proved that valuable improvements had been made by the plaintiffs on the land. One witness stated the value of them to be 2,891 dollars.

*Westerlo*, who was a witness for the defendant, deposed, that, in *October*, 1804, he received a letter from the defendant, dated 26th of *September*, 1804, in which the defendant says, he sends therewith the deed, bond, and mortgage, of *Corl*, the first executed by the defendant, and to be de-

livered to *Corl*, provided he pays the balance, &c., and has the mortgage, *after executing it, put on record in Onondaga*, and brings the clerk's certificate that there was no mortgage or encumbrance thereon. That the witness delivered to *Corl* the deed, on his producing the mortgage and certificate, which was some time after the witness received the deed, but the exact time he could not recollect. That the certificate of the clerk was dated the 9th of *September*, 1805, and the certificate of the registry of the mortgage was of the same date; and the acknowledgment of *Corl*, of the mortgage, was on the 7th of *September*, 1805.

*Gold*, for the plaintiffs, contended, that the only legal evidence of the conditions to be performed by *Corl*, before the deed was to be delivered to him, was the letter of the defendant to *Westerlo*, and that it did not expressly require the acknowledgment of the mortgage by the wife of *Corl*. The conditions were satisfied by the delivery of the mortgage and certificate to *Westerlo*. Besides, the acceptance, by the defendant, of the mortgage, and his acquiescence therein for so long a time, and advertising the premises for sale under the mortgage, amounted to an adoption and ratification of the construction given by *Westerlo* to the letter, and of his acts in pursuance of it, so that the defendant was *estopped* from making any objection to the due delivery of the deed to *Corl*. And, especially, since the death of Mrs. *Corl*, in *August*, 1806, the possibility of any claim of dower was removed, so that the defendant could not be prejudiced by the omission of her acknowledgment.

Again, the conditions on which the deed to *Corl* was deposited with *Westerlo*, having been performed, and the deed delivered to *Corl*, the title to the land vested in him, by relation, from the date of the deed, so as to support the intermediate sales by *Corl* to *Frost* and *Goddard;* but even if it should be considered as taking effect only from the time of the delivery by *Westerlo* to *Corl*, it would still enure to support the previous sales to *Frost* and *Goddard*. (1 *Johns.*

Cas. 81. *Shep.* *Touchst.* 56, 57, 58. 4 *Cruise's Dig.* tit. 32. ch. 11. sect. 55. 1 *Term Rep.* 600. *Sir W. Jones,* 459. 1 *Ld. Raym.* 729. 10 *Vin. Ab.* 360. pl. 7. *Str.* 818. 4 *Johns. Rep.* 230.)

The mortgage of the defendant was not *duly* registered, and it can operate as notice only so far as it was registered. The act (1 *N. R. L.* 372.) expressly provides, " that no mortgage, nor any deed, conveyance, or writing, in nature of a mortgage, shall defeat or prejudice the title or interest of any *bona fide* purchase of any lands, &c., unless the same shall have been *duly registered as aforesaid ;*" and, in the previous section, (s. 1.,) the register is required to enter the names of the mortgagors and mortgagees, the dates of the mortgages, the mortgage money, time of payment, description of lands mortgaged," &c. The registry act would operate as a snare to purchasers, if an erroneous registry was to be regarded as *notice* of the *true* deed. No purchaser would ever think of looking further than the record for the sum for which the mortgage was given. (1 *Schoale & Lefroy's Rep.* 130. 156. *Amb.* 678. 2 *Equ. Cas. Abr.* 609. *Sugden's L. of V.* 467. 469, 470. 2 *Schoale & Lefroy,* 64. *Newland on Cont.* 509. 3 *Cruise's Dig.* 348. tit. 32. *Deed,* c. 21. s. 11. *Str.* 1064. 4 *Vesey,* 389. 1 *Caines' Cases in Error,* 120, *Per* SPENCER, *J.*)

*Bona fide* purchasers for a valuable consideration, are especially protected in this court, particularly against latent equities.

*Emott,* contra, insisted, that there had been no valid delivery of the 'deed from *Beekman* to *Corl.* There was no acknowledgment of it by the wife, and, until every condition was fully performed, there could be no delivery. (*Shep. Touchst.* 59. *Perkins,* s. 142. 4 *Com. Dig.* 159.

If the mortgage was not duly registered, then the condition was not performed. If it was duly registered, then there was *notice ;* so that, *quacunque via data,* the plaintiffs

have no equitable title to relief. *Estopells* are odious, and there is no *estoppel* in this case.

If there was any delivery of the deed, it was after the 9th of *September*, 1805. There was no need of any registry, as respected the original purchasers, who purchased before the existence of the mortgage.

The doctrine of *relation* is for the protection of *right*, and is never allowed to the injury of third persons. (3 *Co. 35. b. 36. a.*) A delivery is never made to have retrospect to the date of the deed, so as to work a wrong to innocent purchasers. There can be no such relation back as to collateral acts. It must, in many cases, be absurd to apply this doctrine of relation to an *escrow*.

The registry, in this case, was sufficient notice to all subsequent purchasers. (2 *Johns. Rep.* 510. 10 *Johns. Rep.* 374. 2 *Vesey*, 441. 13 *Vesey*, 120. 14 *Vesey*, 433.)

A notice is sufficient, before the execution of the deed to the purchaser. (2 *Atk.* 632.) So, it is sufficient, if before the money is paid. (2 *Atk.* 630. 3 *Atk.* 304. 3 *P. Wms.* 306.)

Again, though notice is not charged, yet it must be expressly denied by the purchaser. The plaintiffs, in their bill, ought to have explicitly negatived all notice at the time the deeds to them were executed, or when they paid the money. (1 *Vern.* 179. 3 *P. Wms.* 244.) The plaintiffs have not denied notice, nor shown a want of notice by their proofs.

The fact of improvements made, has no application to this case. The defendant wants only his money, and the court ought to direct that the 3,000 dollars be paid in a reasonable time, or the equity of redemption be foreclosed.

*Frost* gave notes to *Corl*, and there is no proof that the purchase money has ever been paid.

The witnesses, *Healy* and *Cole*, show their interest, and their depositions ought, therefore, to be rejected. The whole proofs show that *Kellogg* never paid the 2,000 dol-

lars for the purchase. At any rate, he had notice of the mortgage before payment, and that is sufficient as to him.

THE CHANCELLOR. This case has led to the discussion of several important questions.

1. The first in order is, whether the deed from *Beekman* to *Corl* was duly delivered, and at what time, so as to pass the estate.

The deed must be taken to have been duly delivered from the time it was handed to *Corl* by *Westerlo*, with whom it had been deposited as an *escrow*. The exact time of this delivery does not appear, but it may be safely fixed as early as the 1st of *October*, 1805, for it must have been after, and shortly after, the registry of the mortgage on the 9th of *September* preceding. The letter from *Beekman* to *Westerlo*, containing the conditions, upon the fulfilment of which the deed was to be delivered, did not expressly, or by any necessary intendment, require that the mortgage should have been previously executed by *Corl's* wife. It mentioned only, that *Corl* was to have "the mortgage (after executing it and the bond) put on record." The agent of the defendant accepted of the mortgage as sufficient, without such acknowledgment, and the defendant afterwards received the mortgage from *Westerlo* without objection, though the want of acknowledgment by *Corl's* wife must have appeared from the mortgage itself. The wife died in the summer of 1806, and the defendant cannot be permitted, under the circumstances of the case, to question the validity of the delivery on the ground that the wife was not a party to the mortgage. Nor can he be heard to say, that the mortgage was not "put on record," so as to defeat the delivery of the deed. The clerk's certificate of the registry was all that the letter to *Westerlo* could have intended. It was not expected that the agent would go into the county of *Onondaga* to inspect the registry himself. The certificate upon the mortgage was accepted by *Westerlo*, and from him by

by the defendant, as sufficient evidence of the registry. The defendant has thus affirmed the delivery of the deed, by accepting the mortgage, with the evidence accompanying it of a performance of the conditions on which the delivery of the deed was made to depend. He ought to be concluded from denying the delivery, especially as against third persons who have acquired interests under it; and this conclusion is the more just and necessary, when we consider that the defendant has never ceased, even since the discovery of the mistake in the registry, to treat the mortgage as valid.

Every deed takes effect from the delivery; and the reasonable inference from the transaction, is to consider the deed as operating only from the time of the performance of the condition, and the actual delivery to the grantee. This is the general rule, as stated by *Perkins*, (sect. 138.,) and it is only to be controverted when justice requires a resort to fiction. In *Butler* and *Baker's* case, (3 *Co.* 35. b. 36. a.,) it was resolved, and the law had, indeed, been so understood long before, (*Bro.* tit. *non est factum*, pl. 5.,) that a deed delivered as an escrow, and afterwards to the grantee, shall relate back to the first delivery, when that relation is necessary to give effect to the deed, as if the grantor, being a *feme sole*, should marry, or if the grantor, whether a *feme sole* or not, should die between the first and second delivery ; but, that in other cases, as where it would avoid a lease, it shall not have that relation, but shall operate according to the truth of the case from the second delivery. The fiction of carrying the deed back by relation, is resorted to from necessity, to prevent injury, and to uphold the deed ; or, as it is expressed in the case from *Coke*, " in such case for necessity, and *ut res magis valeat quam pereat*, to this intent, by fiction of law, it shall be a deed *ab initio*, and yet in truth, it was not his deed until the second delivery." In that case it was likewise resolved that, as to collateral acts, there should be no such relation at all.

In the present case, there is no necessity of resorting to this fiction of relation, as between the parties to the bill. It would operate unjustly upon the defendant, for it would be defeating his mortgage altogether, so far as respected the first deed from *Corl* to *Frost*, which was recorded in *July*, 1805. If the question was between *Corl* and the persons to whom he sold, the deed ought to relate back, so as to give effect to his intermediate grants, and prevent him from defeating them.   This is the amount of the doctrine in *Jackson* v. *Bull*, (1 *Johns. Cas.* 81.) But here is a struggle between innocent persons, to avoid a loss, and we ought not to resort to fiction to help one as against the other. The transaction must be left to rest upon its simple and naked truth.

I conclude, then, that the deed to *Corl* took effect from its delivery to him, about the 1st of *October*, 1805.

Another and a more interesting question, is respecting the extent and effect of the registry of the defendant's mortgage, as notice to purchasers. It was a mortgage for 3,000 dollars, and, by mistake, the registry was only for 300 dollars. This mistake is the whole cause of the controversy.

The registry of a mortgage is notice to subsequent purchasers.

The mortgage act of the sess. 24. ch. 156., declared, among other things, that the registry of a mortgage should contain, not, indeed, the mortgage at large, but the essential parts of the mortgage, and among other specified parts, "the mortgage money, and the time, or times, when payable." To this register all persons whomsoever, at proper seasons, are at liberty to have recourse; and the act declared that mortgages were to have preference, as to each other, according to the times of registry, and that "no mortgage should defeat or prejudice the title of any *bona fide* purchaser, unless the same should have been duly registered, as aforesaid." This registry is notice of the mortgage to all subsequent purchasers and mortgagees; and so the act was construed, and the law declared, by the court of errors, in the case of *Johnson* v. *Stagg*, (2 *Johns. Rep.* 510.)

'The *English* authorities on this point do not, therefore, govern the case. The language of those authorities, undoubtedly, is, that the registry is not notice, though that doctrine is much questioned, and the point seems still to be floating and unsettled. (*Bedford* v. *Backhouse,* 3 *Eq. Cas. Abr.* 615. pl. 12. *Wrightson* v. *Hudson, Ib.* 609. pl. 7. *Morecock* v. *Dickins, Amb.* 678. *Latouche* v. *Dunsany,* 1 *Schoale & Lefroy,* 157. *Sugden,* (3d. *Lond.* ed.) 524—7. *Com. Dig.* tit. 32. *Deed,* ch. 21. s. 11.) The only question with us is, when, and to what extent, is the registry notice? Is it notice of a mortgage unduly registered? or is it notice beyond the contents of the registry?

The true construction of the act appears to be, that the registry is notice of the contents of it, and no more, and that the purchaser is not to be charged with notice of the contents of the mortgage, any further than they may be contained in the registry. The purchaser is not bound to attend to the correctness of the registry. It is the business of the mortgagee, and if a mistake occurs to his prejudice, the consequences of it lie between him and the clerk, and not between him and the *bona fide* purchaser. The act, in providing that all persons might have recourse to the registry, intended *that* as the correct and sufficient source of information; and it would be a doctrine productive of immense mischief to oblige the purchaser to look, at his peril, to the contents of every mortgage, and to be bound by them, when different from the contents as declared in the registry. The registry might prove only a snare to the purchaser, and no person could be safe in his purchase, without hunting out and inspecting the original mortgage, a task of great toil and difficulty. I am satisfied that this was not the intention, as it certainly is not the sound policy, of the statute; nor is it repugnant to the doctrine contained in the books, that notice to a purchaser, of the existence of a lease, is notice of its contents. (*Taylor* v. *Stibbert,* 2 *Ves.* jun. 437. *Hiern* v. *Mill,* 13 *Ves.* jun. 118. 120. *Hall* v. *Smith,* 14 *Ves.* jun. 426.) In that case, the

*Margin:* 1814.
FROST
v.
BEEKMAN.

*Margin:* The registry of a mortgage is notice only to the extent of the sum specified in the registry.

FROST
v.
BEEKMAN.

party is put upon inquiry, and he must make it, or abide the consequences. The decision, in *Jackson* v. *Neely*, (10 *Johns. Rep.* 374.,) was made upon the same principle; and it was held that the recital in a deed of a letter of attorney, by which it was made, was notice to the purchaser of the existence of such a power. But here the statute did not mean to put the party upon further inquiry. The registry was intended to contain, within itself, all the knowledge of the mortgage requisite for the purchaser's safety.

An unauthor-
ized registry of
a mortgage, or
one registered
without any
previous proof
or acknow-
ledgment,
would not, it
seems, be no-
tice to a sub-
sequent pur-
chaser.

The question does not necessarily arise, in this case, how far the unauthorized registry of a mortgage, as one made, for instance, without any previous legal proof, or acknowledgment, would charge a purchaser with notice of the mortgage. The better opinion, in the books, seems to be, that it would not be notice, and that equity will not interfere in favour of an encumbrancer, when he has not seen that his mortgage was duly registered. (*Sugden's Law of Vend.* 527. 1 *Schoale & Lefroy*, 157. *Hiester* v. *Fortner*, 2 *Binney*, 40.) But here every thing was done that could have been previously required of the mortgagee. The mortgage was duly presented for registry, and he was not bound to inspect and correct the record. This was the exclusive business and duty of the clerk, and there is no reason why the registry should not operate as notice, to the amount of the sum mentioned therein; and, indeed, so far the obligation of the registry is admitted by the bill.

I conclude, therefore, that the registry was notice to purchasers, to the amount, and only to the amount, of the sum specified in the registry.

We are next led to consider how far relief can be granted to the defendant consistently with these principles.

Equity gives
no assistance
against a pur-
chaser for a
valuable con-
sideration,
without no-
tice.

Whatever claims the defendant may have to favour, arising from the misfortune attending his case, yet it is an established rule, in equity, to give no assistance against a purchaser for a valuable consideration, without notice. (*Wallwyn* v. *Lee*, 9 *Ves.* 24.) He has equal claims upon the equity of

the court. But, whenever actual notice of the true sum in the mortgage can be brought home to the purchaser, he is from that time, so far as the former purchase is left incomplete, either as to the deed on the one hand, or as to payments on the other, bound by the prior equitable lien, and all subsequent payments, by him, are made in his own wrong, so far as the rights of the mortgagee are concerned. As soon as notice is received, it arrests all further proceedings towards the completion of the purchase and payment, and, if persisted in, they are held to be done in fraud of the equitable encumbrance. (*Wigg* v. *Wigg*, 1 *Atk.* 384. *Story* v. Lord *Windsor*, 2 *Atk.* 630.) Thus, in *Tourville* v. *Naish*, (3 *P. Wms.* 306.,) it was held, that where a man purchases an estate, and pays part, and gives a bond for the residue, notice of an equitable encumbrance, before payment, though after the giving of the bond, was sufficient to stop payment, and to entitle the obligor to relief, in equity, against the bond. Again, in *Hardingham* v. *Nicholls*, (3 *Atk.* 304.,) it was ruled to the same effect, that, if the purchaser for a valuable consideration had not paid the money when notice of the lien was received, though it was secured to be paid, the plea of such a purchase was not good against the plaintiff's title. There can be no doubt as to the rule of equity in this case, and the only difficulty is, to determine from what time the plaintiffs are to be charged with notice of the mistake in the registry of the mortgage.

*Frost* and *M. Goddard* are to be treated as *bona fide* purchasers, without notice. It is so averred in the bill, and there is no proof to contradict it. The last deeds from *Corl* to them, though bearing date in *September*, 1805, were acknowledged in *September*, 1806, and are proved by the witnesses on the part of the plaintiffs, (*Healy* and *Taylor*,) to have been executed in *September*, 1806. At that time, as *Frost* avers, they had no notice, in fact, of the registry, though they were chargeable with notice, in law; and *when* the notice, in fact, not only of the registry, but of the

Notice of an encumbrance stops all further proceedings towards the completion of the purchase, or payment of the money.

mistake in the registry, came to their knowledge, is left to be inferred from circumstances. They have not thought proper to disclose the precise time, and the obscurity in which this fact is left by the plaintiffs, authorizes the presumption that they may have known it sooner than they are willing to declare. The bill does not state at what time the discovery was made of the registry, but only that, "on such discovery," *Frost* applied to the defendant, to pay him the 300 dollars, and was then first informed of the mistake. One of the witnesses (*Whitney*) would lead us to conclude that the first actual knowledge which the parties had of the registry was in *September*, 1807; and it was in *September*, and *November*, 1807, as appears by the acknowledgments upon the deeds, that *Frost* and *Martin Goddard* sold to the other plaintiffs. I think that actual notice of the true mortgage ought to be fixed on *Frost* and *Martin Goddard*, as early, at least, as *September*, 1807. The purchasers from them, who are the other plaintiffs in the bill, make no averment of being *bona fide* purchasers, without notice of the true mortgage. They are perfectly silent on the fact of notice, and the bill is rather equivocal on this point, even as to *Frost*. He only says, that he and *Martin Goddard* alienated " without any knowledge or suspicion of any encumbrance, *except the mortgage registered as aforesaid.*" In all cases in which a party sets up his title to relief in equity, as a *bona fide* purchaser, he must deny notice, though it be not charged. (3 *P. Wms.* 244. n. *Bodman* v. *Van Den Bendy*, 1 *Vern.* 179.) It is a general rule in pleading, that whatever is essential to the right of the party, and is necessarily within his knowledge, must be positively and precisely alleged ; and the plaintiffs coming in the character of *bona fide* purchasers, were bound to state, affirmatively, the equity of their case; if they will not aver the fact, that they were purchasers without notice, we are not bound to presume it. The fact rests in their own knowledge. In *Gerard* v. *Saunders*, (2 *Ves.* jun. 454.,)

the defendant pleaded a purchase for a valuable consideration, without notice ; and Lord *Loughborough* held, that he was bound to deny, fully, and in the most precise terms, every circumstance from whence notice could be inferred.

One of the deeds to Frost, for 200 acres, was dated in 1803, and recorded in 1805, prior to the mortgage; and whatever payments were made upon that purchase before *Frost* was chargeable with notice of the true mortgage, though made prior to the time of the delivery of the defendant's deed to *Corl*, ought equally, with subsequent payments, to be protected against any further sum than that contained in the registry of the mortgage. *Frost* cannot be in a worse situation by paying money before *Corl's* title was perfected, than if he had paid it immediately after. As a *bona fide* purchaser without notice, and so long as that character is preserved, he is not bound beyond the sum in the registered mortgage; and though no prior transaction between *Corl* and him could gain a preference over the mortgage *as registered*, because *Corl* had no title until the delivery of the deed to him, in consequence of that registry, yet, when the delivery took place, the prior deed to *Frost*, and the prior record of it, operated, instantly, so as to protect *Frost's* title *from that time*, and to render him a *bona fide* purchaser, except as to the registered mortgage. It follows, of course, that all prior payments made by him, became equally effectual, subject to the same limitation. A contrary rule would work odious injustice.

The subject of the payments requires this further explanation: and payments to the endorsee or assignee of *Corl*, before notice, are the same as payments to him; and if any part of the debt created by the purchasers, or either of them, had been duly transferred, so as to vest the interest in the assignee; and if either *Frost* or *Goddard*, before notice, had changed the debt in the hands of the assignee, by giving new notes or obligations to the *bona fide* holder, he ought to be allowed for this as payment, because he has extin-

1814.

FROST
v.
BEEKMAN.

guished so much of the old debt, and become absolutely bound to the new creditor.

I shall, accordingly, direct a reference to a master, to state an account upon these principles, and to report what may have remained due from *Frost* and *Goddard*, on the 1st of *October*, 1807; and whatever that balance may be, it is justly subject to the defendant's mortgage, and must be appropriated in part satisfaction of it before the land can be relieved.

" Ordered, adjudged, and decreed, that it be referred to one of the masters of this court, residing in the county of *Onondaga*, to ascertain and report what sum, or sums of money, were actually paid to *Henry Corl*, or to his endorsee, or assignee, duly authorized to receive the same, by *Josiah Frost*, and *Martin Goddard*, respectively, before the first day of *October*, 1807, on any purchases mentioned in the pleadings in this cause, and made by them, or either of them, from him, prior to that date, of lands in lot No. 33., in the township of *Marcellus ;* and that the master distinguish between such payments as were made for principal, and such payments as were made for interest. That he also ascertain, and report specially, whether any, and what part of the debts arising on such purchases, were transferred by *Henry Corl*, for a valuable consideration, and were discharged in the hands of the *bona fide* holder, prior to that period, by *Josiah Frost* and *Martin Goddard*, or either of them, by new notes or obligations : or, if not discharged, of which they had received notice from the assignee before that period. And the master is further directed to state an account of the moneys due on the respective purchases, for principal and interest, after deducting the payments which may have been made, and the parts of the debts discharged or assigned, with notice as aforesaid. And the master is further ordered and directed, to ascertain and report the amount of the principal and interest due on the mortgage

given by *Henry Corl* to the defendant, according to the true sum mentioned in the mortgage, and, also, according to the sum mentioned in the registry thereof; and in taking the accounts aforesaid, the depositions and exhibits in the cause may be used by the parties; and they are to be at liberty to produce further proof, which the master is also to report; and all further questions are in the mean time reserved."