1816.

HEATLEY
v
FINSTER.

[ * 158 ]

*May* 6th.

---

HEATLEY and others *against* FINSTER and MULLER.

A purchaser is chargeable with notice of a suit pending in this Court; and after such notice all further proceedings towards completing the purchase, or paying the money, are fraudulent and void. A denial of notice of the pendency of the suit is not sufficient, if the defendant at the time knew the character of the person of whom he purchased, that he was a trustee, and had no power to sell.

*WINTER*, one of the plaintiffs, was a trustee of certain estates of *Heatley*, the plaintiff, with power to sell parts of the same under certain restrictions. *Heatley*, having no children, granted the trust estates to *T. Green*, his sister, for life, with power to dispose of the same among her children. On the 17th of *May*, 1809, *Winter* sold 50 acres, part of the trust estate, to *Muller*, the defendant, for 750 dollars, payable in seven annual instalments, with interest; the first instalment to be paid on the first of *April*, 1811. *Muller* occupied the land so purchased of *Winter* until 1814, having paid 80 dollars of the purchase money, when he assigned *the contract for the purchase to *Finster*, the defendant, who entered on the land, and has improved it to this time. A bill having been filed against *Winter* for a breach of trust, an injunction was issued, to restrain him in the further exe-

*August* 13th.
See *Murray* v. *Finster*, the last case.

[ * 159 ]

127

1816.

HEATLEY
v.
FINSTER.

cution of his trust, and *Murray* was appointed to manage the trust estates in his stead. *Murray* obtained an order of this Court that *Winter* should convey the premises in question to *Muller*, or to *Finster*, his assignee, on payment of what was due on the contract, or on his giving a bond and mortgage for the residue of the purchase money, which order was served on *Finster*, who refused to concur in carrying the order into effect, and *Winter* also refused to deliver the contract to *Murray*, alleging that it was mislaid. The bill stated that *Winter* and *Finster*, by concert, obtained an order of the Court, to carry into effect the contract between them, with a view to defraud the owners of the estate, &c.

The defendant *Finster* put in a plea and answer. The plea stated that *Muller*, in 1812, assigned the contract to *Finster*, who agreed to pay the purchase money, but that he, *Finster*, had lost the contract, or delivered it up to *Winter;* that *Winter* having approved of the assignment, the defendant *Finster*, in *September*, 1813, filed a bill against *Winter* for a specific performance of the contract; and in the same month, a decree was entered, by consent, for carrying into effect the contract, on payment of the purchase money due to *Winter*, and giving him a mortgage for the residue. That in pursuance of that decree, *Winter*, on the 14th of *January*, 1814, in consideration of 1,015 dollars, due on the contract, conveyed the premises to the defendant *F.*, who, at the same time, gave to *Winter* his promissory notes for about 300 dollars, and which, except one for 118 dollars, were negotiated, and had been paid by the defendant to the holders ; and that he paid the residue of the purchase money to *Winter*. The defendant *F.* averred, that at the time of purchasing the contract, and receiving the conveyance *from *Winter*, and making the payment of the purchase money, and giving the security pursuant to the said order or decree, he, *F.*, had no knowledge of any suit in chancery against *Winter*, or of any order or injunction of the Court, as mentioned in the bill of the plaintiffs ; and the defendant, therefore, pleaded the conveyance, &c. in bar of the relief prayed by the plaintiffs.

In his answer, the defendant *F.* denied any personal knowledge of the order or injunction against *Winter*, but he believed they existed as stated in the bill. He admitted the service on him by *Henry Green*, in *August*, 1814, of the order to carry into effect the purchase with *Murray*, which he refused on the ground that he had, before, without any knowledge of any order of injunction, received a conveyance of the premises from *Winter*, and had paid part of the consideration money, and given his notes for the residue. That, being an ignorant man, occupied in agriculture, he

[ * 160 ]

128

acted, in a great degree, under the influence of *Winter*, who represented himself to be, and was generally considered to be, the owner of the land in fee.

The bill was taken *pro confesso* against *Muller*

*Gold*, for the plaintiffs. He relied on the case of *Murray* v. *Ballou*, (1 *Johns. Ch. Rep.* 566.) and the cases there cited.

*N. Williams*, for the defendant *Finster*.

THE CHANCELLOR. When *Finster* took an assignment of *Muller's* contract, the consideration had not been paid to *Winter*. The plea admits that 1,015 dollars were due and paid by the defendant to *Winter*, in 1814, when a deed was executed. The question is, whether the whole negotiation between the defendant and *Winter*, and the payment of the money, was not, in judgment of law, a fraud upon the rights of the plaintiffs. I consider the defendant as chargeable, at that time, with notice of the suit then *pending against *Winter*, for a breach of trust. In explanation of the rule on this point, I can add nothing to what was said in the case of *Murray* v. *Ballou*, (1 *Johns. Ch. Rep.* 566.) The defendant denies notice of the suit, but there is no denial of notice of the character in which *Winter* dealt; and, indeed, after the proof that we have had in the case of *Murray* v. *Finster*,† of positive and direct notice given to the defendant, as early as 1812, (and which notice is not even denied in that case,) the denial of actual notice here of the existence of any suit against *Winter*, when he made the payment in 1814, cannot but excite surprise and concern. The amicable suit instituted between the defendant and *Winter* in *September*, 1813, and terminated as soon as it was commenced, by a decree, by consent, adds nothing to the validity of the defendant's claim. It was nothing more nor less than a private agreement put into the shape of a decree for a more imposing appearance. *Muller's* original contract, though good in the first instance, was left inchoate, without delivery of the deed, or payment of the money; and when the party became chargeable with notice of the suit against *Winter*, he was bound to cease all further dealing with him, on the subject matter of the trust. (See cases cited in 1 *Johns. Ch. Rep.* 301.) To allow the payment to stand good would be permitting trust property to be fraudulently dissipated in contempt of the authority, and in evasion of the process of this Court.

I shall, therefore, decree, that the defendant *Finster*, within 40 days from the service of a copy of this decree,

[ * 161 ]

† *Ante,* p. 155.

1816.

GARDNER
v.
VILLAGE OF
NEWBURGH.

pay to the solicitor of the plaintiffs, or bring into Court, the sum of 1,015 dollars, with interest from the 14th of *January*, 1814, unless he shall, within that time, elect to convey in fee, and actually convey by deed, with proper covenants against his own acts, to be approved by a master, the premises in the pleadings mentioned, to *Mary Green* and *Henry Green*, to be held by them in trust, &c. · and that in either case, he pay the costs of this suit. ·

[ * 162 ]	*GARDNER *against* THE TRUSTEES OF THE VILLAGE OF NEWBURGH, and HASBROUCK and BELKNAP.

> The owner of land through which a stream of water runs has a legal right to the use of the water, of which he cannot be deprived without his consent, or a just compensation.
>
> This Court has a concurrent jurisdiction with Courts of law, in a case of private nuisance by diverting or obstructing an ancient water course, and may issue an injunction to prevent the interruption, though the plaintiff has not established his title at law.
>
> Though the legislature has power to take private property for useful and necessary public purposes, it is bound to provide a fair compensation to the individual whose property is taken, and until a just indemnity is afforded to the party, the power cannot be legally exercised.
>
> Where an act of the legislature authorized the trustees of a village to supply it with water, by means of conduits, and, for that purpose, to enter on the lands of other persons, to make reservoirs, and lay conduits, &c., and provide compensation for the owners of such land, and also for the owner of the land on which the spring or source from which the water was to be conducted was situated, but· made no provision for indemnifying the owners of lands through which the stream flowed, and, from such spring, had run, from time immemorial, for the injury they must suffer by diverting the course of the stream from their farms; the Court granted an injunction to prevent any proceeding to divert the stream until provision was made for a just compensation to the persons who might be injured by diverting the water.

*August* 22d.	THE bill, which was for an injunction, stated, that the plaintiff is owner of a farm in the village of *Newburgh*, through which a stream of water has, from time immemorial, run, having its source from a spring in the adjoining farm of the defendant *Hasbrouck*, and after entering the plaintiff's land, continues its whole course ·through his farm, until it empties into the *Hudson* river. That this stream greatly fertilizes his fields, and, running near his house, serves for watering his cattle, and for various domestic and economical purposes. That it supplies water to a brick yard on the farm

130