## Stephens *et al.* *versus* Rinehart *et al.*

1. L. made deeds to several children and gave them to M. to be recorded after his death and handed to the grantees. *Held*, the delivery by relation took effect when they were given to M.

2. No declarations of L. after the delivery to M., except such as would countermand the delivery to the grantees, would be evidence.

3. When the future delivery is dependent upon a condition the deed is an escrow ; when to await the lapse of time or a contingency, it is the grantor's deed presently, but will not take effect till the second delivery, but then by relation to the first.

4. An escrow operates only from the performance of the condition and actual delivery to the grantee, except where a relation to the first delivery is necessary to give effect to the deed or intermediate conveyance of the grantee.

5. Huss v. Morris, 13 P. F. Smith 367, adopted.

November 18th 1872.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Greene county:* of October and November Term 1871, No. 220.

This was an action of ejectment brought March 17th 1866, by Eleanor A. Rinehart and others, against Barzilla Stephens and others, for the undivided fifth part of 600 acres of land.

The land had been the property of Andrew Lantz, Sr., deceased, under whom both parties claimed; the plaintiffs were the heirs of Andrew Lantz, Jr., deceased, a son of Andrew Lantz, Sr.

The cause was tried, September 6th 1871, before Gilmore, P. J.

The plaintiffs offered in evidence a deed, dated June 26th 1853, between Andrew Lantz, Sr., of the first part, and the heirs of his son, Andrew Lantz, Jr., of the other part.   By this deed, "for the natural love and affection he hath for said heirs as well as for" one dollar, the grantor conveyed "to the said party of the second part and to their heirs and assigns" three tracts of land, containing about 430 acres.

This offer was objected to, because the deed was to the heirs of a living man, and because there appears on the face of the paper an erasure and insertion, viz.: "*Son, Andrew Lantz.*"

The plaintiffs then called Joseph L. McConnell, a subscribing witness, who testified that he had filled up the deed, it being a printed form; that he made the erasure, and wrote the words "Son, Andrew Lantz;" the grantor had intended to convey the land to John Lantz's son; witness proceeded to fill the blank with that understanding, and before the execution, grantor determined to give the land to his son Andrew's children; in consequence the witness made the erasure and insertion.

The court admitted the deed, and sealed a bill of exceptions.

The plaintiffs then gave in evidence deed of same date, from Andrew Lantz, Sr., of the first part, and "the heirs of Andrew Lantz, Jr.," of the part second by which the grantor, "for the natural love and affection he hath for his grandchildren," as well as for one dollar, &c., granted other land "unto the party of the second part," &c. The land for which this suit is brought is that comprised in the first deed.

McConnell testified that he wrote both deeds; that the grantor wanted the land conveyed to his son Andrew's children; he mentioned their names; he gave witness the same instructions for filling both deeds; he wished to convey the land to his "grandchildren, born and yet to be born."   He was sure there would be other

[Stephens *v.* Rinehart.]

children, and wanted them all equal. His first wife was dead; he was then intending to be married again, and wanted this arrangement made first; his intended wife knew of the arrangement; a number of deeds were drawn; he was satisfied if made to "the heirs" of Andrew, it would pass the land to his children born and to be born, equally; that was what he particularly desired; the word "heirs" was used in accordance with his instructions.

After the deeds were drawn the old man took them and afterwards acknowledged them, put them into a box, wanted witness to take charge of them; he left them in the care of Gen. Lazear; there were other deeds to other descendants in the box; he afterwards got the box, and destroyed some of the deeds. He told witness to see that after his death the proper persons got the deeds; that Andrew's children got theirs; to see that the deeds were recorded, as some of the children were young. Witness had the deeds recorded; informed the persons to whom the conveyances were made, and after the recording handed them to the proper persons; Andrew Lantz, Jr., was then in possession of the land conveyed to his grandchildren. Old Mr. Lantz died in March 1858.

On cross-examination witness said, the old man wanted to make the deeds legal, so that they would stand, and that the children, and those to be born, should not be cheated out of their share; he said his object was to convey to his grandchildren by his son Andrew.

The defendants gave evidence that shortly before his death, Andrew Lantz, Sr., said that Henry Lantz, Andrew Lantz and McConnell had tried to cheat the other heirs "out of his intentions," that he had tried to get his deeds from them and they would not give them up. He afterwards said he made deeds to all his children, and they would all be about equal.

During the trial the following offers of evidence were made by the defendants, objected to by the plaintiffs, overruled, and several bills of exceptions sealed to the rulings of the court on them.

1. To prove that at a meeting of the family, at which the old man, John, Andrew, Henry, Jacob, Rose, Barzilla Stephens and J. L. McConnell were present, and which occurred only a few months before his death, and long after the time at which McConnell testifies a portion of the deeds had been taken from the box and destroyed, the old man declared that it was then, and had always been, his intention that all his property, real and personal, should be equally divided among all his children; that he said to J. L. McConnell, "I will depend on you to see that this is done after my death," and that McConnell promised him that he would see to it.

This for the purpose of proving the fraudulent purpose of defeating the old man's intention, and of cheating the other heirs

[Stephens *v.* Rinehart.]

out of their respective parts of the estate of Andrew Lantz, and also for the purpose of contradicting the testimony of J. L. McConnell.

Answer: "We sustain the objections, but will allow evidence to contradict and invalidate the evidence of McConnell."

2. To prove that the old man, some time after the meeting referred to in the foregoing offer, discovered that Andrew, Henry and McConnell were acting in concert and fraudulently, and that he declared that they had got his deeds from him; that he had tried to get them back from them, but they would not give them up to him; that he was then so old and feeble that he could not help himself, and that he wanted the other heirs, after his death, to get their shares by the law.

This is offered for the purpose of proving the fraudulent combination to defeat the intention of Andrew Lantz, Sr., of establishing a fraud, and proving that he, the said Andrew Lantz, was held in such duress as would defeat his intention, and also for the purpose of disproving the delivery of the deeds.

Answer: "We reject the evidence, except so far as it may go to prove that the old man countermanded the delivery of the deeds to these plaintiffs; except for this purpose alone the evidence is incompetent."

3. To prove that Henry Lantz, after the date of the deeds and before the death of the old man declared that he and Andrew and McConnell had combined together, and had got the control of the old man and the possession of his papers; also offered to prove that Andrew made similar declarations to be followed by proof of acts of McConnell, in furtherance of the fraudulent combination, and to be further followed by proof that the box containing the deeds was sometimes in the possession of McConnell, and sometimes in the possession of Henry and Andrew—this for the purpose of showing a fraudulent conspiracy to defeat the old man's intentions, and to cheat the other children out of the property the old man intended them to have. Also for the purpose of disproving the delivery of the deeds, and contradicting the testimony of J. L. McConnell.

Answer: "We reject all evidence of the declarations of either Henry or Andrew Lantz, as also the declarations of Jos. L. McConnell, for the reason that he was not questioned to this matter when on the stand, but we will admit evidence that the box containing these deeds was sometimes in the possession of Henry or Andrew."

4. To prove by John Cowell: That he saw the box in the possession of Henry Lantz, and at the time he declared the box contained his father's deeds, which he had made to his children; to be followed by proof that he (Henry Lantz) said he was at his father's one day, watched his opportunity, slipped the box, and

carried it off under his coat. This for the purpose of proving his part in the combination to defeat his (Andrew Lantz's) intention, and for the purpose of disproving any legal delivery of the deeds.

Answer : " We do not see any sufficient evidence of combination to authorize the declarations of Henry Lantz to be given in evidence. The evidence is therefore refused."

The plaintiffs' second point and its answer were :—

From the deeds themselves and from the testimony of Joseph McConnell, the jury may find that Andrew Lantz, Sr., instructed the said J. L. McConnell to describe the grantees in the deed for the land in dispute exactly as in the other deed, and that the words "for his grandchildren " were left out of the deed conveying the land in dispute, by the accident or mistake of the said McConnell when he drew the deed, or by accident or mistake ; and if they so find the facts, then the deed is a sufficient conveyance in law and equity to the plaintiffs.

Answer : " We give you this instruction, which is simply this— If the word ' grandchildren ' was omitted in the deed for any cause or reason, not inconsistent with the intent to give the land to his grandchildren, the expression or words in the deed inconsistent with this may be explained by satisfactory and clear evidence, such as will satisfy you beyond doubt."

The following are points of the defendants and their answers :—

3. If Joseph L. McConnell be believed, the word heirs was not used in the clause which describes the grantees by mistake for some other word or words, but was deliberately selected by the grantor as the term by which he wished to designate or describe the grantees.

Answer: "If the jury find that Mr. McConnell proved that the word heirs was inserted by the dictation and authority of Lantz, and if the jury believe that Lantz understood the legal effect of the word, and intended it to mean nothing more than what the word legally implied, then the words are to have in the deed its legal signification and no more, which render the deed void. But the jury believe the evidence of McConnell, and he proves to you satisfactorily that the grantor did not understand the legal effect of the word heirs, and he did desire and so instruct the scrivener, Mr. McConnell, to draw the deeds so as to make it effectual in giving the land to the children of Andrew Lantz, Jr., both to those who were then born and to those who might afterwards be born, and that the word heirs was used by mistake to make the deed an effectual grant so as to embrace the children in life as well as the after-born, it is such a mistake as may be corrected by undoubted satisfactory evidence, and if believed it would constitute a good grant to the grandchildren of the grantor, and if it was a mistake in not inserting the words ' grandchildren ' so as to give the proper effect to the deed, it may now be corrected."

[Stephens *v.* Rinehart.]

4. The consideration of "natural love and affection for his grandchildren" is not inconsistent with, or repugnant to, the grant to "the heirs (in its legal sense) of his son Andrew." A grant to "the heirs of his son Andrew for a consideration moving from his grandchildren" would be good if there were no other legal difficulties in the way.

Answer: "The consideration of natural love and affection for his grandchildren, is some evidence on the face of the deed, that he intended the grant for his grandchildren, and is repugnant to the idea that the grant was to be void."

5. If the grantor directed the scrivener to describe the grantees as "the heirs of his son Andrew" after discussion between them of the fitness of the word "heirs" to answer the end intended, and after other plans for drawing the deeds had been proposed and rejected, it cannot fairly be inferred that he used the word "heirs" in the sense of grandchildren, even if grandchildren was inserted for heirs in the consideration clause.

Answer: "This is a matter for argument to you, but if the grantor, directed the scrivener to use the words 'heirs of his son Andrew,' and he believed that this was the expression and these the words which would embrace the after-born children, and this expression was used with this view instead of 'grandchildren,' it would not now prevent us from reforming the deed so as to meet the real intention of the grantor, if you are fully satisfied and have evidence on this point which leaves the matter without doubt, that he intended the grant for his grandchildren."

6. From inspection, it is apparent, that there was a material alteration in the deed under which the plaintiffs claim, and though McConnell testifies that it was done shortly after it was written, yet the jury may and it is their duty to consider the evidence that proves the alteration was made long after the deed was written, namely: that the alteration in the deed and in the endorsement, is not with the same pen and ink; that A. Lantz had the lines run dividing this tract from the other tract and from the testimony of Mr. and Mrs. Stephens and Abner Fordyce—that he had deeded this land to Andrew Lantz, son of John, and if the jury find that these alterations were made sometime after, that then there is no evidence that A. Lantz, Sr., ever gave instructions to McConnell to draw this deed to the "grandchildren," and if so, that the deed as it now stands is null and void.

Answer: "We simply instruct you in answer to this point, that unless you believe the alteration was made as McConnell said it was made, the deed is void and plaintiffs cannot recover."

The verdict was for the plaintiffs.

The defendants removed the record to the Supreme Court and assigned for error: the rulings of the court on the offers of evidence, and the answers to the foregoing points.

[Stephens *v.* Rinehart.]

*E. M. Sayres* (with whom were *Wyly & Buchanan*), for plaintiffs in error.—The deeds were not delivered: Stephens *v.* Huss, 4 P. F. Smith 20. A combination may be proved by the acts and declarations of the parties to it; liberality in proof is allowed: McDowell *v.* Rissell, 1 Wright 104; Stauffer *v.* Young, 3 Id. 455; Deakers *v.* Temple, 5 Id. 234. The conveyance to the "heirs," was void for uncertainty: Morris *v.* Stephens, 10 Wright 200.

*A. A. Purman,* for defendants in error, cited Stephens *v.* Huss, 4 P. F. Smith 20. The transaction was completed by the delivery of the deeds to McConnell; the title then passed to the grantees and could not be affected by subsequent acts and declarations of the grantor: 4 Kent's Com. 503, 505; Merrills *v.* Swift, 18 Conn. R. 257; Taw *v.* Bury, 2 Dyer 167 b; Alvoed and Lea's Case, 2 Leon. 110; Butler and Baker's Case, 3 Co. 26 b; Doe *v.* Knight, 5 Barn. & Cress. 671; Church *v.* Gilman, 15 Wendell 656; O'Kelly *v.* O'Kelly, 8 Metc. 436; Foster *v.* Mansfield, 3 Id. 412; Wheelwright *v.* Wheelwright, 2 Mass. 447; Hatch *v.* Hatch, 9 Id. 307; Read *v.* Robinson, 6 W. & S. 329; Thompson *v.* Leach, 2 Vent. 201; Ivory *v.* Burns, 6 P. F. Smith 300; Souverby *v.* Arden, 1 Johns Ch. R. 240: Shelton's Case, Cro. El. 7; Pratt *v.* Holman, 16 Verm. 503; Lloyd *v.* Bennett, 8 C. & P. 124; Blight *v.* Schenck, 10 Barr 285.

There must be evidence of a conspiracy before the acts or declarations of the alleged conspirators can be given in evidence, 1 Greenl. Ev. sec. 111. As to a conveyance to heirs, he cited: Morris *v.* Stephens, 10 Wright 200; Huss *v.* Morris, 13 P. F. Smith 367; 1 Id. 282; 4 Id. 20.

The opinion of the court was delivered, January 6th 1873, by

SHARSWOOD, J.—That the delivery of the deed in controversy after the death of the grantor, took effect by relation to the first delivery, seems a point very well settled by the decided cases: Morris *v.* Stephens, 4 P. F. Smith 20. In Foster *v.* Mansfield, 3 Metcalf 414, C. J. Shaw said: "Where the future delivery is to depend upon the payment of money or the performance of some other condition, it will be deemed an escrow. Where it is merely to await the lapse of time or the happening of some contingency, and not the performance of any condition, it will be deemed the grantor's deed presently. Still it will not take effect as a deed, until the second delivery; but when thus delivered it will take effect by relation from the first delivery." He adds: "As the estate did not effectually pass till the second delivery, if that second delivery had been prevented, it would probably have been held that it was wholly inoperative." In Belden *v.* Carter, 4 Day

[Stephens *v.* Rinehart.]

66, A. having signed, sealed and acknowledged a deed conveying a tract of land to B., took up the deed in the absence of B., and said to C.: "Take this deed, and keep it; if I never call for it, deliver it to B. after my death: if I call for it, deliver it up to me." C. took the deed. A. died soon afterwards, having never called for it, and then C. delivered it over to B.: it was held that this was the deed of A. presently; that C. held it as trustee for B.: that the title became consummate in B. by the death of A., and that the deed took effect by relation from the time of the first delivery. To the same effect is Stewart *v.* Stewart, 5 Conn. 317, and the authorities which are cited in these cases fully sustain the rule laid down. If the object of Andrew Lantz, Sr., in making the deed here in question, was to prevent his intended second wife from obtaining by the marriage any dower in the land, it was necessary in order to secure that result, that the deed should take effect presently, so that if the first delivery had been expressly as an escrow, it would in order to effectuate the intention have been held to relate.

In Perkins, sect. 9, a case in the Year Books is referred to where a single woman made a deed, which she delivered to a third person as an escrow, to be delivered in case the grantor returned from Rome, and then the woman married, and afterwards the deed was delivered: it was decided that the estate passed at the time of the first delivery and the marital right of the husband never attached. So Chancellor Kent decided in Frost *v.* Beekman, 1 Johns. Ch. 288, that a deed delivered as an escrow is operative only from the time of the performance of the condition, and the actual delivery to the grantor, except in cases where a relation back to the first delivery is necessary to give effect to the deed or to the intermediate conveyances of the grantee. It follows that the delivery of the deed of Andrew Lantz, Sr., is to be considered as operative from its date, and the ruling of the learned judge which excluded evidence of the declarations of Andrew Lantz, Sr., except so far as they went to prove that before his death he had countermanded the delivery of the deed, was entirely correct. Nor can it be pretended that the declarations of Henry Lantz, Andrew Lantz, Jr., or J. L. McConnell, were competent without some previous evidence of a fraud perpetrated by them on Andrew Lantz, Sr., or of a conspiracy by them to perpetrate such a fraud, and of this there was none.

The answers of the learned judge below to the several points which are complained of in the remaining assignments of error, conform to the opinion and decision of this court when this case was here before: Huss *v.* Morris, 13 P. F. Smith 367.

Judgment affirmed.