## Longacre v. Hornblower & Weeks

Russell C. Gourley, for plaintiff.

W. Heyward Myers, Jr., Helen M. Wilcox and Rambo & Mair, for defendant.

FLOOD, J., July 23, 1952.—This is a dispute between a surviving joint tenant of shares of stock and the wife of the deceased joint tenant over their respective rights in said shares.

On May 10, 1950, Jay D. Roy turned over to Hornblower & Weeks, the stakeholder in this action, certain shares of stock under a written agreement in which it was recited that he and Anne Elizabeth Longacre, plaintiff here, were joint tenants thereof with right of survivorship, with the right in either of them "on behalf of the joint account . . . to terminate or modify same". On August 4, 1951, Jay D. Roy died. On January 30, 1952, plaintiff brought this suit against Hornblower & Weeks claiming the property by virtue of her right of survivorship. The stakeholder thereafter interpleaded Lillian Roy, claimant, who is the widow of Jay D. Roy and had filed a complaint in this action on March 22, 1952, claiming the property by virtue of sections 1(2) and 11 of the Estates Act of April 24, 1947, P. L. 100, 20 PS §§301.1(2) and 301.11. Plaintiff filed preliminary objections in the nature of a demurrer contesting the application of the aforesaid act to the facts of this case. She also claims that claimant has stated her claim in her additional matter and not in the complaint proper, but, we take

it, has waived this formal objection by asking us in her brief to decide the case on the merits. We treat the pleadings as having been properly amended and come at once to the merits of the case.

Section 11 of the aforesaid act of assembly reads as follows:

"A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved. . . ."

Section 1 of the same act defines a conveyance as follows:

" 'Conveyance' means an act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation."

1. In our opinion, the setting up of this joint tenancy agreement was a conveyance of assets, as that term is defined in section 1(2) of the act. The broad and general definition of conveyance in this act seems to us to admit of no other conclusion. Cf. Black Estate, 73 D. & C. 86 (1950). Claimant maintains that this conveyance by her husband was subject to a power both of consumption and revocation. These powers, she claims, are derived from the words of the agreement itself and also from his common-law right as a joint tenant to sever his interest at any time.

The rights given in the agreement to either tenant to terminate or modify the agreement must be read together with the phrase from the previous part of the sentence, "on behalf of the joint account". In other words, though the husband could have terminated the joint tenancy in these shares by his own unilateral act, the joint tenancy in the proceeds would have per-

sisted. See, In re Culhane's Estate, 334 Pa. 124 (1939). This provision, along with many like it, was no doubt inserted for the convenience of the broker in handling the matter and does not affect the rights of the joint tenants inter sese. The language of the agreement does not indicate that the husband has reserved any power either of revocation of the joint tenancy or of consumption.

2. While no power of revocation or consumption is reserved expressly by the language of the agreement, such power does inhere in a joint tenant at common law. The agreement recites that the securities are "owned by us as joint tenants with right of survivorship". This declaration of joint tenancy gives the parties thereto by operation of law all the rights, duties, liabilities and powers of joint tenants under the law of Pennsylvania. See Mardis, Administratrix, v. Steen, 293 Pa. 13 (1928). One of the incidents of a joint tenancy is the power in either tenant to sever the tenancy and to reacquire individual rights therein. By creating a tenancy which carried with it such a power the husband was retaining some power over the assets conveyed. This is certainly a power of revocation pro tanto. It is probably also a "power of consumption" as that phrase is used in the act. The phrase "power of consumption" does not have a settled meaning in the law, and it appears to us that the legislature was using the word "consumption" according to its common meaning, and intended to apply the act to all conveyances of assets subject to a power in the transferor to reacquire beneficially the property conveyed. The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 33, 46 PS §533, requires that words and phrases be construed according to their common usage when they have not acquired any peculiar meaning in the law. It is to be noted that in the first case decided under this act, Black Estate, supra, Judge van

Roden indicated that the creator of a tentative trust retains sufficient beneficial powers to bring himself within the provision of the act. A creator of a tentative trust normally retains no powers by express language since the power to draw might mean to draw for the benefit of the tentative cestui que trust. But it hardly can be denied at this date that he has the power to consume the assets of the trust in the absence of proof of an intention to the contrary: A. L. I. Restatement of the Law of Trusts §58, comments (a) and (b).

The widow is thus entitled to her testamentary share of the assets over which her husband retained the power of consumption, or which he would regain upon exercising his power of revocation. What interest a joint tenant takes when he severs the estate is not completely clear under our cases. Is there an irrebuttable presumption that each takes one half or only a rebuttable one as in the case of the tenancy in common? The general rule stated in 48 C. J. S. §6, p. 930, is as follows:

"The shares or interests of joint tenants are presumed to be equal, although the contrary may be shown by proof. If one cotenant has paid more than another, their respective interests are to be determined by the proportion which the amount paid by each bears to the entire sum which was the consideration for the property. . . ."

But Pennsylvania does not seem to be in accord with the above quotation. In American Oil Company v. Falconer et al., 136 Pa. Superior Ct. 598 (1939), a mother supplied all the assets for the creation of a joint account in the name of herself, her son and her daughter. While all parties were still alive, a creditor of the son levied on the joint account thus severing the estate. The issue was presented as to whether the creditor got one third of the account or whether he took

nothing since the son had put nothing into the fund. The court held that the creditor got one third of the account. In re Cochrane's Estate, 342 Pa. 108, 111, (1941) contains language to the same effect but it should be said that the court was there dealing with a tax statute which provided that the interests of joint tenants should be determined by an arbitrary division of the assets into equal parts.

Under the law of Pennsylvania the husband could, during his lifetime, have severed this joint tenancy and have returned to himself one half of the property conveyed, but under the above cases he is not entitled to the whole fund even though he contributed all of the assets. Under the act the widow is entitled to treat the creation of the account as testamentary as to one half thereof. Since there are no children she is entitled to one half of this portion of the account. She is thus entitled to one fourth of the account.

In holding that a trust created before the effective date of the act was testamentary, Judge Lefever relied upon the present act as establishing a public policy to protect the rights of widows. He stated:

"This court will not lightly exclude a widow from her share in her husband's estate no matter how noble may be his objective or those of his beneficiaries. The widow's claim in such a situation will be viewed by this court in a benign spirit, intent upon protection of her rights."

We think the above statement ably reflects the intention of the legislature in passing the act in question and feel that the statute should receive the liberal treatment rightly given to all remedial legislation.

Even though the legal conclusions set forth in paragraph 12 of the claimant's complaint may be incorrect, she does have a good cause of action for one quarter of the assets in the account. Therefore the preliminary objections are not well taken.

The preliminary objections are dismissed. Plaintiff may file an answer to the merits of claimant's complaint within 20 days.