## George A. Gourley *versus* Linsenbigler.
## John M. Gourley *versus* Same.

1. Choses in action may be the subjects of *donatio mortis causâ*.

2. *Donatio mortis causâ* is a gift of a chattel made by a person in his last illness or *in periculo mortis*, subject to the implied conditions that if the donee die first, or the donor recover, the gift is void.

3. A soldier about to start for the army, handed to a friend two promissory notes, enclosed in an envelope addressed to plaintiff, and told him to deliver it to her, and if he never came back, he wanted her to get the notes, that he would rather she should have them than any other person. They were delivered to her two days afterwards. The donor was in good health at the time, but died of disease in the army about four months after. *Held*, not a good *donatio mortis causâ*.

ERROR to the Court of Common Pleas of *Armstrong county*:

In the court below there were two suits depending upon the same facts. One was at the suit of Matilda J. Linsenbigler against George A. Gourley, and the other at the suit of the same plaintiff against John M. Gourley; the record in the latter, on motion of the plaintiff's attorney, was amended so as to stand "George A. Gourley, Administrator, &c., of Benjamin F. Gourley, deceased, for use of M. J. Linsenbigler *v.* John M. Gourley."

The first case was on the following note :—

$365.75.　　　　　　　　　　Rural Village, July 26th 1861.

One day after date, I promise to pay to the order of B. F. Gourley., three hundred and sixty-five dollars and seventy-five cents, for services in store in full.

　　　　　　　　　(Signed)　　　GEORGE A. GOURLEY.

The other case was on this note :—

One day after date, I promise to pay to B. F. Gourley, or order, one hundred and forty-four dollars and twenty-nine cents, for value received. Witness my hand and seal, July 27th 1861.

　　　　　　　　　　　　　　JOHN M. GOURLEY.

[Gourley *v.* Linsenbigler.]

Benjamin F. Gourley, the payee of these notes, was an unmarried man, who entered into the military service of the United States July 27th 1861. On that day he showed these notes to a friend, J. K. Patterson, and enclosed them with another small note and a five dollar bank note in an envelope, endorsed,

"Miss M. J. Linsenbigler, Pleasant Hill.

" In politeness of friend Patterson."

Patterson testified, " he called in my store the day he was leaving and gave me these notes ; he came into my store ; some few in there ; he called me back into the wareroom, and showed me a note on George A. Gourley, one on John Gourley and one on a man in the pines ; don't recollect the name ; and he put a $5 bill and the notes in an envelope ; after he put them in he sealed it up and told me to give it to Tilda Linsenbigler, and said if he never came back he wanted her to get it, as he would rather she would get it than any other person ; that he wanted her to have these notes, and would rather she would have them than any other person. He said to give it to her the first time I saw her,—the first time she would be in the village. I got the envelope on Saturday, and delivered it to her on the following Monday, sealed up just as I received it."

There was evidence that the plaintiff and the deceased were engaged to be married.

On the 29th of July he wrote to plaintiff from Pittsburgh : " I handed J. K. Patterson a few lines and the notes. Also, I told him the way of it, as I had to let him see me when I was fixing it up. He said he would say nothing about it. I told him not to. But if I do not get back I do not care who knows it, as I told him I would much rather you would get it than any person else."

On the 5th of August he wrote to her from Harrisburg : " When you write, let me know if you got all I left you, and if Patterson gave you a separate note. I forgot to put it in with the rest. I suppose he will think me very liberal, as he saw me put the bill in with the note. I would not let him see it, but could not help it. The store was full of people at the time, and I had to go back to his warehouse, and he went along with me ; but I do not care, as I trust I was leaving all with a true friend ; and if I do not get back, if you can get all I will be satisfied."

On the 6th of September he wrote to her from Washington : " But I thought it more my duty to spend a few moments in conversing to you for this may be the last time ; but I hope not. But if so, what I gave to you, put in hands that will attend to it justly and honestly for you ; for I want you to get all if I do not get back."

He died in the field, of disease, November 26th 1861. The

[Gourley *v.* Linsenbigler.]

suits were tried and resulted in verdicts for the plaintiff, but the judgments thereon were removed to the Supreme Court, and argued at the Western District in 1864, when they were reversed, the opinion being delivered by

READ, J.—The same error was committed in both these cases, in holding that the gifts of these promissory notes by Benjamin F. Gourley, the decedent, to the plaintiff below, were *donationes mortis causâ*. They were delivered by a soldier to the plaintiff or for her when he was going to the front, but months before his death and when he was neither in his last illness nor in *periculo mortis*. He said if he never came back he wanted her to get them, as he would rather she should get them than any one else. The gift is therefore not sustainable as a *donatio mortis causâ*, and as there was no consideration can it be sustained on any other ground ?

The case most resembling this is *Re* Patterson Mitchell *v.* Smith, 33 Law Ins. Ch. 597, decided by the Lords Justices on the 9th June 1864. The payee of three promissory notes executed the following endorsement, preceded by the delivery of them to the endorsee : " I bequeath—pay the within contents to Simon Smith or his order at my death." There was a single witness to the payee's signature. In the act of the delivery of the notes the payee expressed an intention " to be master of the notes as long as he lived." It was held that the transaction constituted a testamentary gift and was as such void, there being only one witness. In Pennsylvania it would have been valid. " It had occurred to me at one time," said Lord Justice Turner, " that the object of this form of endorsement might perhaps be, to enable the endorsee to hold the notes in trust, for the testator during his life and then for himself absolutely. But this construction would be inconsistent with the testator's expressed intention to remain master of the notes as long as he lived. " The gift in my opinion was testamentary, and being incomplete is invalid. The right to negotiate a promissory note does not pass unless the requisite endorsement and delivery have been gone through."

These do not, therefore, appear to be testamentary gifts, nothing that can be construed into a will appearing in any part of the evidence.

> Judgment reversed, and *venire de novo* awarded in both cases.

On the 6th of November 1865, a re-argument was ordered by the Supreme Court in both cases.

*Boggs* and *Purviance*, for plaintiffs in error.—To constitute a *donatio mortis causâ*, it must be in contemplation of death and the donor's supposed last illness : Hodge *v.* Hodge, 2 Vern. 615,

[Gourley *v.* Linsenbigler.]

2 Ves. 439, 442 ; Wells *v.* Tucker, 2 Binn. 370. A symbolical delivery is not sufficient. These notes required a transfer, and there was not a sufficient delivery : Miller *v.* Miller, 3 P. Wm. 357 ; 1 Story's Eq. § 607, c. ; Bradley *v.* Hunt, 5 Gill & Johns. 54 ; 1 Sharswood's Black. 514. Such gifts are against the policy of our laws : Wells *v.* Tucker, 3 Binn. 370 ; Priscilla E. Yarnall's Estate, 4 Rawle 62, 2 Johns. 502. Such gift is also subject to debts : 2 Ves. 115, 438 ; Drury *v.* Smith, 1 P. Wm. 406. The defendant as administrator had the right to receive the note, and what was left after payment of debts the plaintiff might receive in distribution.

*Golden & Neale*, for defendants in error.—The gift was good as a will. Our Statute of Wills, § 8, Pamph. L., 250 Purd. 1017, provides that a mariner at sea, and a soldier in actual military service, may dispose of his movables as before the act : Hood on Executors 515.

Such wills require no formality : 1 Sharswood's Black. 417. The letters of deceased, particularly September 6th 1861, are a good military testament. He was in actual service ; letter written and signed by himself ; words of gift unequivocal. This may be considered a gift *inter vivos ;* it was completely executed by a delivery of the gift in donor's life. His control over them depended upon a *condition subsequent :* Cross *v.* Cross, 8 Ad. & E. N. S. 714 ; Redfield on Wills, Pt. 1, ch. 4, pp. 179, 180.

The actions are properly brought. Miss Linsenbigler could compel the administrator to allow the use of his name : Grover *v.* Grover, 24 Pick. 261. The declarations to Patterson and the letters, with the delivery, constitute a " making over" under the Act of May 28th 1715, Purd. 112 ; Acts 23d and 24th April 1829, Purd. 399. Endorsement need not be on the thing transferred : 1 Pars. on Contracts 237, n. j ; Byles on Bills 115 ; 2 U. S. Dig. 467–8 ; 2 Harrison's (English) Dig. 2305 ; 2 Kent's Com. 437, § 38 ; 4 Taunt. 326 ; Hath *v.* Hall, 2 Rose 271 ; Grover *v.* Grover, 24 Pick. 261 ; McFadden *v.* Hunt, 5 W. & S. 468 ; Hall *v.* Logan, 10 Casey 331.

The property is a gift *causâ mortis :* 2 Kent's Com. 558. Choses in action may be thus given : Brown *v.* Brown, 18 Conn. R. 410 ; Craig *v.* Craig, 3 Barb. Ch. R. 78, 117, 118 ; Smith *v.* Kittridge, 21 Vt. 238 ; Wells *v.* Tucker, 3 Binn. 365 ; 6 Bac. Ab. 162 ; Gardner *v.* Packer, 3 Madd. 184 ; Snellgrave *v.* Baily, 3 Atk. 214 ; Dig. English Law and Eq. R. 235, Nos. 2, 3, 4 ; 4 Cush. 87 ; 7 Gray 382 ; 9 Met. 339 ; 13 Gray 382 ; 14 Pick. 204 ; Redfield on Wills, Pt. 2, pp. 309, 310, 311, 313, and foot-notes.

The evidence from which the jury found a delivery is stronger than in many cases where delivery has been established : Tate *v.* Johnston, 2 Ves. Jr. 120 ; Johnston *v.* Smith, 1 Ves. 314 ; 6 Bac. Ab. 162, n. ; Michener *v.* Dale, 11 Harris 59.

[Gourley v. Linsenbigler.]

The donor need not have immediate death in view : Dig. Eng. Law and Eq., p. 235, pl. 1. The gift is good if made in peril of death from battle, &c.: 6 Bac. Ab. 161, note 162; Nichols v. Adams, 2 Whart. 22 ; 2 Kent's Com. 554, 555. Can the administrator defeat the plaintiffs' claim ? The gift is to be resorted to for debts only after the general estate is exhausted : 6 Bac. Ab. 162, 163 ; 1 P. Wms. 406, 441 ; 2 Ves. Sr. 439 ; 2 Strange 777 ; 1 Shars. Black. 514 and n. ; Mateer v. Hissim, 2 Penna. R. 160 ; Michener v. Dale, 11 Harris 59 ; 1 Roper on Legacies 3 ; Tate v. Hilbert, 2 Ves. Jr. 120 ; Walter v. Hedge, 2 Swans. 98.

The opinion of the court was delivered, January 1st 1867, by

READ, J.—These two cases were reargued together upon a single point, upon which alone our opinion will be delivered.

The two promissory notes drawn by the two defendants in favour of B. F. Gourley, the decedent, but not endorsed by him, may be the subject of a *donatio mortis causâ* according to the latest authorities.

A bond is a proper subject of a *donatio mortis causâ :* Wells v. Tucker, 3 Binn. 370.

So is a mortgage, also bills of exchange or promissory notes payable to order and unendorsed, and a policy of life assurance, and a banker's deposit note : Witt v. Amis, 1 B. & S. 109 (101 E. C. L.) ; Amis v. Witt, 33 Beav. 619 ; Veal v. Veal, 27 Beav. 303 ; Rankin v. Weginlin, Id. 309 ; Sessions v. Mosely, 4 Cush. 87 ; 1 Story's Eq. 8th ed. 607. So giving an evidence of debt to a servant for the debtor, saying she wished the debt cancelled : Moore v. Darton, 7 Eng. L. & Eq. 134. So a check on a banker : Boutts v. Ellis, 31 Eng. L. & Eq. 174 ; see Harris v. Clark, 3 Comstock (N. Y.) 114. "Besides formal legacies given by will, there is also permitted a death-bed disposition of property, called a *donatio mortis causâ.* That is when a person in his sickness, apprehending his dissolution near, delivers or causes to be delivered any personal goods or chattels to another, or puts the physical means of dominion over them into his power, to keep them for himself, or for some one else in case of the donor's decease. The subject of the gift must be personal property in possession or in action. Bonds and mortgage-deeds so delivered, are effectual to pass the debt ; bills or checks drawn by the deceased on his banker, to pass the money. The delivery of a key has been deemed to amount to a delivery of the trunk and its contents. In the event of the donor recovering, the property reverts to him. If the donor die, the property belongs to the donee without the assent of the executor, though not as against creditors :" 1 Spence's Equitable Jurisdiction 196. "A claim to property on the ground of its having been a *donatio mortis causâ* must fail, if it appear to be a transaction of present gift. A party

[Gourley *v.* Linsenbigler.]

making a *donatio mortis causâ* does not part with the whole interest save only in a certain event; and it is of the essence of · such a gift that it shall not otherwise take effect; but words of absolute gift, if accompanied by expressions showing that the intention was, that the property should be enjoyed only in the event of the death of the donor, will be sufficient to constitute a *donatio mortis causâ:*" 2 Id. 912.    Judge Story in his Commentaries, vol. 1, § 607 a, says: "We have already seen that by our law there can be no valid donation *mortis causâ,* 1st, unless the gift be with a view to the donor's death; 2d, unless it be conditioned to take effect only on the donor's death by his existing disorder, or in his existing illness:" 3 Story's R. 763.

It is evident that the language used by the authorities in speaking of—in contemplation of death—in expectation of death or in apprehension of death—applies to the cases of illness ending in death, the last illness which makes it a death-bed disposition.    If the donee dies before the donor, or the donor revokes the gift, there is no *donatio mortis causâ.*

In Michener *v.* Dale, 11 Harris 59, the present chief justice gave a definition which I think accurate, and sustained by the authorities in England and America.    "*Donatio mortis causâ* is a gift of a chattel, made by a person in his last illness, or in *periculo mortis,* subject to the implied conditions, that if the donor recover, or if the donee die first, the gift shall be void."

To apply these authorities to the case before us,—B. F. Gourley enlisted in the army in Captain Beck's company, on Saturday, 27th July 1861, and on the same day gave to Mr. Patterson two notes which are the subjects of the present suits, in an envelope directed to the plaintiff, " and told him to give it to her, and said if he never came back he wanted her to get it, as he would rather she would get it than any other person, that he wanted her to have these notes, and would rather she should have them than any other person.    He said to give it to her the first time I saw her, the first time she would be in the village.    I got the envelope on Saturday and delivered it to her on the following Monday (29th July), sealed up just as I received it."

He said he would rather she should have them than anybody else.    B. F. Gourley was in good health at the time of the delivery of the notes, joined the army, and remained in the service until he died of quinsy on Tuesday, 26th November 1861, four months after the gift above stated.    He was engaged to the plaintiff, and no doubt desired her to have these notes in case of his death; but it was not a *donatio mortis causâ,* being made in full health and not in his last illness, or in *periculo mortis,* nor in contemplation or expectation or apprehension of death.

Judgments in both cases reversed, and *venire de novo* awarded in both.