## Culhane's Estate.

Argued March 21, 1939. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*William B. Washabaugh, Jr.,* with him *Arthur W. Mitchell,* for appellants.

*D. J. McLaughlin,* with him *J. R. Haughney,* for appellee.

OPINION BY MR. JUSTICE LINN, April 10, 1939 :

The decision depends on the effect to be given to what Mrs. Culhane did with money bequeathed to her by her husband and deposited by her in a savings account in the Erie Trust Company. The facts are stated at length by the Superior Court[1] from whose judgment this appeal was allowed. We all agree, for the reasons stated in the opinion of the Superior Court, that (1) the evidence is insufficient to support a contract by her and her husband to make mutual wills and (2) there was a valid gift inter vivos to Miss Albracht, of a joint tenant's interest in the bank account. The arguments presented on behalf of the accountant on these two branches of the case are sufficiently answered by the Superior Court and require no further discussion here.

---

[1] 133 Pa. Superior Ct. 339, 2 A. (2d) 567.

The question for our consideration grows out of the history of the transaction after the Secretary of Banking took charge of the depositary Trust Company for purposes of liquidation. The only addition to the joint account made after it was created was an interest credit of $115.18 as of December 15, 1932; the only withdrawal was by Mrs. Culhane, $4.40, on June 1, 1933. The joint account then was in credit in the sum of $6,693.29.

On August 7, 1934, the Secretary of Banking made a distribution of 33⅓% to depositors and sent to Mrs. Culhane, who resided in Erie, where the Trust Company was, a check drawn to the order of Catherine Culhane or Grace Ethel Albracht. In December, 1934, an additional dividend of 6⅔% was paid by a check similarly drawn and sent to Mrs. Culhane. She endorsed and collected both checks and placed the proceeds in a safe deposit box rented by her[2] from the First National Bank of Erie. Miss Albracht resided in Missouri, and testified that, when that was done, Mrs. Culhane wrote to her advising of the facts; she also testified that her aunt had lost faith in banks and proposed[3] thereafter "to take out a lock box."

Of the total of those two payments, $2,724.18, the parties agree that $1,900 remained in the safe deposit box where it was found after the death of Mrs. Culhane. The right to additional dividends on the original balance due by the Trust Company on the joint account of course remained. The controlling agreement, dated September 3,

---

[2] She provided that access to the box should be by her or Mary Woods.

[3] "Q. This passbook was in her possession at the time of her death? A. Yes, you see my aunt told me because, well, you know with the Erie Trust Company she lost faith and said, 'When I get money, any cash of any kind and when I get any money I will never put it into another bank. I will take out a lock box and it will not be in a bank.' And of course I knew at the time she had this that, well, it was the only money she had, that is dividend money."

1932, and accepted by the Trust Company, is quoted in a note.[4]

The account—a chose in action—belonged to both as in joint tenancy. The provision in the contract that "either of us may draw and receipt for the whole or any part thereof" meant that either had authority as agent for the joint owners to withdraw and receipt on behalf of both exactly as if they had appointed some third party to be their agent for the purpose. The amount distributed was not withdrawn by either agent but was paid in the statutory liquidation of the joint account. Catherine Culhane was authorized by the writing deposited with the Trust Company to receipt for it. She discharged the debtor by cashing the checks. No question arises concerning her use of part of the fund received; Miss Albracht makes no claim against the decedent's estate for the money used. The argument is that as Mrs. Culhane did not consume the entire fund, but, on the

---

[4] "We, the undersigned, hereby declare that we are the joint owners in joint tenancy of the money that is now or may hereafter be deposited in the Erie Trust Company in our names, and of any interest that may accrue or be credited thereto, and that either of us may draw and receipt for the whole or any part thereof, either before or after the death of the other and that at the death of either of us the survivor shall be the absolute owner of the balance then due the account, as surviving joint tenant, and is hereby authorized to receive the same from said bank on his or her individual check or order therefor. It is further stipulated that this agreement is not revocable except on notice in writing signed by both parties hereto.

"Witness our hands and seals.

"(Signed)   Grace Ethel Albracht   (Seal)
"(Signed)   Catherine Culhane   (Seal)

"Witness
"C. C. Bliley   (Signed)
"Date—Sept. 3, 1932."

On August 28, 1933, they executed another agreement, confirmatory of the intention expressed in this. It is quoted in the opinion of the Superior Court.

contrary, retained it, as described, she acted in accord with, and not contrary to, her obligation to the coöwner of the joint account. To hold otherwise (the argument proceeds) it would be necessary to attribute to her an intention to profit by her own wrong in diverting the joint property to her own use by placing it in the safe deposit box to the exclusion of the coöwner (cf. *Powell v. Lantzy,* 173 Pa. 543, 549, 34 A. 450). The law will not presume that she intended to act unlawfully when the facts will support, as here, an inference that she intended to act lawfully. The burden of proof was on the accountant, not on Miss Albracht. That Mrs. Culhane might not so exclude the coöwner finds support in cases dealing with joint accounts held by entireties. In *Berhalter v. Berhalter,* 315 Pa. 225, 173 A. 172, the court enjoined the wife from withdrawing substantially the entire account as part of a plan to desert her husband and take the proceeds to a foreign country; her conduct was treated in equity as an offer to sever the tenancy by a division of the property, the severance being made effective by the decree. In *Madden v. Gosztonyi Savings, etc., Co.,* 331 Pa. 476, 200 A. 624, it was held the husband's participation in the reorganization of the debtor bank was on behalf of both and discharged the obligation of the bank owing the account. In the circumstances, then, we think that the amount remaining in the safe deposit box and the right to receive any balance distributable in further liquidation, are properly held in joint tenancy by Mrs. Culhane and the appellee in this court and that, accordingly, the amount should be awarded to the survivor.

The order of the Superior Court is affirmed, costs to be paid out of funds in the hands of the accountant.