## Barrett, Appellant, *v.* Heiner.

. Argued April 10, 1951. Before STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Will Leach,* with him *Leach & Lenahan,* for appellant.

*David J. Conroy,* with him *James W. Scanlon,* for appellees.

OPINION BY MR. JUSTICE BELL, May 21, 1951:

Plaintiff filed a bill in equity against his niece, Alyce Heiner, and her husband praying that they reconvey to him the property, 1406 Prospect Avenue, Scranton, Pa., which he had shortly prior thereto conveyed to them and that they pay him reasonable compensation for rent of said property.

The court found that no confidential relationship existed between plaintiff and defendant; that the conveyance of the property was not induced by defendants but was the free, voluntary and clearly understood act of the plaintiff; and that the defendant paid a fair price for the property. From a decree dismissing the bill of complaint, plaintiff has taken this appeal.

1406 Prospect Avenue was purchased by plaintiff's brother, Thomas Barrett, *for $2500 in 1930.* Shortly thereafter defendants and their two sons moved into the property under an agreement to provide a home for Thomas Barrett. Defendants paid no rent, except for six months in 1940 when Thomas Barrett left the property as a result of an altercation.

Plaintiff was a civil service employee of the Federal Government and in the later years of his service was stationed in Cuba. During and prior to that time he sent money to defendant, Alyce Heiner, to keep for him. These remittances totaled $3937. On September 10, *1945,* plaintiff bought the Prospect Avenue property from his brother for *$2500.* The purchase price was, at plaintiff's direction and on his behalf, paid by Alyce out of the $3937 he had sent her. The balance of approximately $1400 was paid to plaintiff by Alyce in April 1947. Plaintiff had demanded, received and kept an exact account of the amounts due him over the years from Alyce for money which plaintiff sent her, less the cost of medicine and other necessities which Alyce purchased for plaintiff. Plaintiff became ill and returned to his home in October 1946; and from that time until February 1948, Alyce took care of him (except for one month when he was a patient in Jefferson Hospital, in Philadelphia).

For several years prior to February 1948, plaintiff repeatedly told Alyce *and others* that he was holding the property, 1406 Prospect Avenue, for her, and that any repairs or improvements she and her husband might make would be for their own benefit; that he wanted no rent for the property, but wished them to pay the taxes, which they did. In the first part of *February 1948* plaintiff, *unaccompanied,* went to the offices of an attorney, Mr. Leo Rafferty, *for the purpose of having him draw a will, devising the property*

*to Alyce.* Several days later he returned to Rafferty's office and told him he would like to get a loan on the property to pay anticipated hospital bills, but he didn't want the Heiners to know anything about it. Rafferty, on plaintiff's behalf, filed an application for a loan with the Scranton Building & Loan Association. *On February 12, 1948,* Rafferty advised plaintiff it was doubtful whether the Building & Loan Association would grant him a loan while he was in the hospital. Plaintiff then said that he might as well turn the property over to the Heiners and let them get the loan and pay the money to him, since the property would be the Heiners' in any event. Rafferty, in accordance with plaintiff's instructions, drew a deed for the property to the defendants and next day; i.e. *February 13, 1948,* accompanied by his secretary, Mary McNamara, a notary public, brought the deed to plaintiff who was still in the hospital. Plaintiff read, signed and acknowledged the deed before his attorney and the notary public and the notary public signed and placed her seal thereon. *Plaintiff's doctor testified that at that time plaintiff was mentally competent and in full possession of his faculties.* Defendants first learned of the (deed or) transfer of this property to them when Mr. Rafferty phoned Mrs. Heiner and told her the deed had been executed and advised her of the plan to mortgage the property in order to secure money to pay the bills incurred or likely to be incurred by plaintiff.

On *February 23, 1948,* the defendants met Rafferty at the Building & Loan Association and received a check for a mortgage loan of $2000 (secured on said property) which check they endorsed and delivered to plaintiff who in turn endorsed it and deposited it in his account. *On or about March 1,* plaintiff first demanded that the defendants reconvey the property to him. *Plaintiff never mentioned to Rafferty anything about defendants reconveying the property to him until*

*May 1948.* Defendants, in reliance on plaintiff's repeated statement or promise that the property was theirs, had made extensive repairs costing $1031. Alyce advanced to plaintiff $450 cash in addition to the money which plaintiff had turned over to her.

The chancellor found that as a result of the above mentioned repairs totaling $1031, the $450 cash, and the $2000 mortgage loan, *the defendants paid $3481 for the property; and that this was a fair price for the property.* Plaintiff never offered to return to defendants the $1481 or to otherwise restore the status quo if they would reconvey the property to him. *The chancellor further found that no confidential relationship existed between the parties; that the plaintiff deeded the property to the defendants voluntarily and of his own free will at a time when he was possessed of all his faculties and was mentally competent; and that there was no express, constructive or resulting trust in his favor.*

There was no allegation in plaintiff's bill of complaint of fraud, undue influence, duress or mistake. Plaintiff merely alleged, in his amended bill of complaint, that he had the utmost faith and confidence in his niece and that "when complainant signed the deed for his property he had the utmost faith and confidence that the said Alyce Heiner would return the property to him, and that *during her subsequent visits before the check was received by him she promised to do so".* We deduce from these averments the plaintiff was alleging a confidential relationship and an *express trust,* although he did not aver that the express trust arose, if ever, until she promised to return the property to him after it had been deeded to her but before she received the check for the mortgage loan. The chancellor found that defendant had never made such a promise; although if the promise had been made and

* Italics ours.

had created an express parol trust of real estate it would have been void: *Gray v. Leibert,* 357 Pa. 130, 53 A. 2d 132.

Plaintiff correctly and at great length sets forth the law with respect to a confidential relationship and the duty that arises when such relationship exists. It is unnecessary to discuss or review the authorities on the subject of confidential relationship, since we are convinced that under the facts no confidential relationship was established; and that even if it had been, the defendants fulfilled any obligation they might have had by proving that the deed was the free and voluntary act of the plaintiff, that it was not induced by the defendants, and that the plaintiff knew the nature, meaning, significance and consequences of his act: *Kees v. Green,* 365 Pa. 368, 75 A. 2d 602; *McCown v. Fraser,* 327 Pa. 561, 192 A. 674; *Matthaei v. Pownall,* 235 Pa. 460, 84 A. 444.

Plaintiff also complains of the chancellor's findings and conclusions. It is, by now, hornbook law that *findings of fact* by a chancellor who saw and heard the witnesses, especially when approved by the court in banc, *will not be reversed by an appellate court if there is adequate evidence to sustain them: Roth v. Hartl,* 365 Pa. 428, 75 A. 2d 583; *Kees v. Green,* 365 Pa. 368, 75 A. 2d 602. The chancellor's findings of fact were supported by adequate evidence in this case and therefore they will not be disturbed.

While conclusions of a chancellor are always reviewable upon appeal when they are merely inferences or deductions from findings of fact: *Payne v. Winters,* 366 Pa. 299, 77 A. 2d 407; *Noonan Estate,* 361 Pa. 26, 30, 63 A. 2d 80; we agree with the chancellor's conclusions of law that no confidential relationship or express or resulting or constructive trust was established.

Decree affirmed at cost of appellant.